1  AMY R. LEVINE, State Bar No. 160743
   alevine@mbdlaw.com
2  DAMARA MOORE, State Bar No. 215678
   dmoore@mbdlaw.com
3  SARAH L. DANIEL, State Bar No. 233814
   sdaniel@mbdlaw.com
4  MILLER BROWN & DANNIS
   71 Stevenson Street, 19th Floor
5  San Francisco, CA 94105
   Telephone: (415) 543-4111
6  Facsimile: (415) 543-4384

7  Attorneys for Defendants
   SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11

12  G.B., a minor by and through T.B., his      Case No.  C-08-02805 EDL
    Guardian Ad Litem,
13                                              **DEFENDANT SAN RAMON VALLEY**
                     Plaintiff,                 **UNIFIED SCHOOL DISTRICT'S MOTION**
14                                              **FOR SUMMARY JUDGMENT**
              v.
15                                              Hearing Date:    August 26, 2008
    SAN RAMON VALLEY UNIFIED                    Time:            9:00 a.m.
16  SCHOOL DISTRICT,                            Courtroom:       E, 15th Floor
                                                Magistrate Judge: Hon. Elizabeth Laporte
17                   Defendants.
                                                Complaint Filed: June 5, 2008
18

19

20

21

22

23

24

25

26

27

28

SF 321317v1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   APPLICABLE LAW ......................................................................................... 2

    A.    Overview of the Individuals with Disabilities Education Act ................................ 2

    B.    Assessments and Reassessments Under the IDEA ................................................ 3

    C.    Exhaustion of Administrative Remedies ............................................................... 4

    D.    Standard of Review and Burden of Proof ............................................................. 5

III.  STATEMENT OF FACTS ................................................................................ 7

    A.    Student's Last Triennial Assessment .................................................................... 7

    B.    June 2006 Independent Academic Assessment .................................................... 8

    C.    District Efforts to Conduct Student's Triennial Assessment Due in November 2007 .................................................................................................... 9

    D.    Request for IEE ................................................................................................... 11

IV.   ARGUMENT ................................................................................................... 13

    A.    The ALJ Correctly Held the District Is Entitled to Reassess Student ................. 13

        1.    The ALJ's Decision Correctly Determined Conditions Warrant Reassessment of Student .......................................................................... 14

        2.    The ALJ's Decision Properly Held Plaintiff Is Not Entitled to Dictate Personnel Assignments ............................................................... 17

        3.    Parents Were Provided All Information Necessary to Give Informed Consent to Reassessment But Refused .................................... 19

    B.    The ALJ's Order Should be Affirmed as Plaintiff Is Not Entitled to an IEE at This Time .................................................................................................. 20

        1.    The ALJ Correctly Determined Plaintiff Does not Disagree with a District Assessment ................................................................................. 21

        2.    The ALJ's Decision Must be Upheld Because Plaintiff Does Not Seek an IEE ............................................................................................. 22

        3.    Even if Plaintiff Were Entitled to an IEE at District Expense, Plaintiff Waived the Right to an IEE .......................................................... 22

SF 321317v1

TABLE OF CONTENTS

4.      Even if Plaintiff Were Entitled to an IEE, an IEE Would Only
        Encompass the Academic Domain, and the District Would Still be
        Entitled to Reassess Student in All Areas of Suspected Disability........... 23

C.      The ALJ's Decision Should be Upheld, Because Plaintiff's Claims Are
        Barred by the Failure to Exhaust Available Administrative Remedies............... 23

V.      CONCLUSION ............................................................................................. 24

TABLE OF CONTENTS

SF 321317v1

TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. State of Oregon,*
    195 F.3d 1141 (9th Cir. 1995)..............................................................17

*Amanda J. v. Clark County Dist.,*
    267 F.3d 877 (9th Cir. 2001)..................................................................2

*Andress v. Cleveland Indep. Sch. Dist.,*
    64 F.3d 176 (5th Cir. 1995).............................................................13, 18

*Berkeley Unified Sch. Dist.,*
    106 LRP 49486 (2006)...........................................................................16

*Board of Educ. of the Hendrick Husdon Cent. Sch. Dist., v. Rowley,*
    458 U.S. 176 (1982) ........................................................................2, 3, 5

*Capistrano Unified Sch. Dist. v. Wartenberg,*
    59 F.3d 884 (9th Cir. 1995)...............................................................1, 6

*Clyde K. v. Puyallup Sch. Dis., No. 3,*
    35 F.3d 1396 (9th Cir. 1994)..................................................................6

*County of San Diego v. California Special Educ. Hearing Office,*
    93 F.3d 1458 (9th Cir. 1996)..................................................................6

*David D. v. Dartmouth Sch. Comm.,*
    775 F.2d 411 (1st Cir. 1985) .................................................................4

*Dreher v. Amphitheater Unif. Sch. Dist.,*
    22 F.3d 228 (9th Cir. 1994)...................................................................4

*Dubois v. Connecticut State Bd. of Ed.,*
    727 F.2d 44 (2nd Cir. 1984) ................................................................13

*Glendale Unified Sch. Dis. v. Almasi,*
    122 F.Supp.2d 1093 (C.D. Cal. 2000)..................................................6, 7

*Gregory K. v. Longview Sch. Dist.,*
    811 F.2d 1307 (9th Cir. 1987).................................................3, 6, 13, 17

*Hayes v. Unified School Dist. No. 377,*

iii

877 F.2d 809 (10th Cir. 1989)...........................................................................4

*Hoeft v. Tucson Unif. Sch. Dist.*,
   967 F.2d 1298 (9th Cir. 1992)........................................................................5

*Loren F. v. Atlanta Independent Sch. System*,
   349 F.3d 1309 (11th Cir. 2003).....................................................................6

*M.T.V. v. DeKalb County Sch. Dist.*,
   446 F.3d 1153 (11th Cir. 2006)....................................................................13

*Manteca Unified Sch. Dist.*,
   47 IDELR 85, 106 LRP 63898 (2006)..........................................................14

*MM v. School District of Greenville County*,
   303 F.3d 523 (4th Cir. 2002).........................................................................6

*Ojai Unified School District v. Jackson*,
   4 F.3d 1467 (9th Cir. 1993)...........................................................................6

*Ripon Unified Sch. Dist.*,
   107 LRP 57047 (2007)............................................................................14, 18

*Robb v. Bethel School Dist. #403*,
   308 F.3d 1047 (9th Cir. 2002).............................................................2, 4, 24

*Slama v. Independent School District No. 2580*,
   259 F.Supp.2d 880 (D. Minn. 2003) ............................................................18

*Temecula Valley Unified Sch. Dist.*,
   46 IDELR 268, 106 LRP 64094 (2006) ........................................................14

**Statutes**

20 U.S.C. section 1400 .......................................................................................2

20 U.S.C. section 1414 ........................................... 1, 3, 7, 13, 14, 19

20 U.S.C. section 1415 ...........................................................1, 2, 3, 4, 5

California Education Code section 56205 ...........................................................1

California Education Code section 56320 .........................................................14

California Education Code section 56321 ..................................................3, 19

TABLE OF AUTHORITIES

California Education Code section 56329 ........................................................4, 19

California Education Code section 56333 ................................................................7

California Education Code section 56381 ................................................ 1, 3, 7, 14, 19

California Education Code section 56501 ................................................................3

California Education Code section 56505 ................................................................2

California Education Code section 56506 ................................................................3

## Regulations

34 C.F.R. section 300.300...................................................................................3

34 C.F.R. section 300.502...............................................................................4, 21

SF 321317v1    TABLE OF AUTHORITIES

## I.    **INTRODUCTION**

This case requires expediency.    The Individuals with Disabilities Education Act ("IDEA") requires the speedy resolution of disputes, to ensure that a student is not denied access to the programs or services to which he is entitled under the law, including current and comprehensive evaluation.  20 U.S.C. § 1415(g)(2); Cal. Educ. Code § 56205(f).  Plaintiff was due for an updated assessment in November 2007 and, because of his parents' refusal to consent to that assessment, an entire school year has passed without its completion.  Plaintiff will begin his senior year of high school next month.  Time is of the essence.  Further delay in the assessment process will minimize the effect of the assessments, will deny both parties' rights to which they are entitled under the law, and would be in direct conflict with the intention of the IDEA.

This is a case about G.B.'s parents' objection to San Ramon Valley Unified School District's ("District") efforts to discharge its legal obligation to G.B. ("Student").  G.B. is now a 17 year-old student, who is eligible for special education and related services under the category of speech or language impairment.  Under the IDEA, the District has an obligation to assess G.B. at least once every three years to determine his needs and provide him a free appropriate public education ("FAPE").  20 U.S.C. § 1414(a)(2)(A); Cal. Ed. Code, § 56381(a)(1) and (2).  However, G.B.'s parents ("Parents") refused to consent to assessments, and on April 8, 2008, the District was forced to seek an administrative due process hearing against G.B. and his Parents.

Through the administrative hearing process, convened on May 12-14, 2008, the District sought resolution of two issues:  (1) whether the District has a right to assess Student pursuant to its October 11, 2008 assessment plan, as enhanced or revised on January 8, 2008; and (2) whether Parents are entitled to an independent educational evaluation ("IEE") at this time.  The District prevailed on both issues at the hearing and Parents filed this appeal.  Pursuant to the IDEA, the District now seeks summary judgment in its favor.  *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) ("*Wartenberg*").  As the administrative law judge ("ALJ") correctly determined, the District is entitled to conduct a reassessment of Student for

1

SF 321317v1

1  his triennial evaluation and Student is not entitled to an IEE.  Furthermore, to the extent Plaintiff

2  raises new claims in the Complaint, Plaintiff has failed to exhaust his administrative remedies.

3  *Robb v. Bethel School Dist. #403*, 308 F.3d 1047, 1050 (9th Cir. 2002).

4  **II.    APPLICABLE LAW**

5      **A.    Overview of the Individuals with Disabilities Education Act**

6      The IDEA "ensure[s] that all children with disabilities have available to them a free and

7  appropriate public education that emphasizes special education and related services designed to

8  meet their unique needs and prepare them for further education, employment, and independent

9  living." 20 U.S.C. § 1400(d)(1)(A).  One of the four purposes explicitly set out in the IDEA is

10  "to assess, and ensure the effectiveness of, efforts to educate children with disabilities."  20

11  U.S.C. § 1400(d)(4).  To achieve its purposes, the IDEA "provides federal money to assist state

12  and local agencies in educating handicapped children. ..." *Board of Educ. of the Hendrick*

13  *Husdon Cent. Sch. Dist., v. Rowley,* 458 U.S. 176, 179 (1982) ("*Rowley*").

14      In addition to the substantive requirements, the IDEA also includes procedural

15  safeguards which, if violated, may prevent a child from receiving a free appropriate public

16  education ("FAPE").  *Amanda J. v. Clark County Dist.,* 267 F.3d 877, 882 (9th Cir. 2001).

17  However, not every procedural violation is sufficient to support a finding that a student was

18  denied a FAPE.  To constitute a denial of FAPE, a procedural violation must result in either the

19  loss of educational opportunity, or a serious infringement of the parents' opportunity to

20  participate in the IEP process. *Id.* at 892; 20 U.S.C. § 1415(f)(3)(E)(ii); Cal. Ed. Code, §

21  56505(j).  Mere technical violations will not render an IEP invalid. *Amanda J.*, 267 F.3d at 882.

22  Here, there are no procedural claims at issue.

23      "[A] court's inquiry in suits brought under § [1415(i)(2)] is twofold.  First has the State

24  complied with the procedures set forth in the Act?  And second, is the individualized education

25  program developed through the Act's procedures reasonably calculated to enable the child to

26  receive educational benefits." *Rowley,* 458 U.S. at 206-207.  Substantively, a school district

27  must create an individualized education program ("IEP")  tailored to the unique needs of the

28

2

1  disabled child.  20 U.S.C § 1414(d).  An IEP is a written document prepared annually that

2  outlines the educational plan for the student.  *Rowley*, at 458 U.S. at 182; 20 U.S.C. § 1414(d).

3  The IEP should be crafted in such a way that the child's individual needs, supported by services,

4  allow the child to benefit from his education.  *Rowley*, *supra*, at 189.[1]

**B.    Assessments and Reassessments Under the IDEA**

6  The information contained in an IEP is derived from assessments, which is the

7  cornerstone of the IEP process.  20 U.S.C. § 1414(b)(2)(A).  The IDEA provides:  "A local

8  educational agency shall ensure that a reevaluation of each child with a disability is conducted

9  … if the local educational agency determines that the educational or related services needs,

10  including improved academic achievement and functional performance, of the child warrant a

11  reevaluation" or, "if the child's parents or teacher requests a reevaluation."  20 U.S.C. §

12  1414(a)(2)(A).  Reassessment of special education students must occur at *least once every three*

13  *years* or more frequently if the local education agency determines conditions warrant

14  reassessment.  20 U.S.C. § 1414(a)(2).[2]  (Emphasis added)

15  A reassessment requires parental consent.  20 U.S.C. § 1414(c)(3); Cal. Ed. Code, §§

16  56321(c), §56381(f).  To obtain parental consent, a school district must develop and propose an

17  assessment plan.  20 U.S.C. § 1414(b)(1); Cal. Ed. Code, §§ 56321(a), 56381(f).  Parents who

18  want their children to receive special education services must allow reassessment by the

19  District.  *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1315 (9th Cir. 1987).  If parents do

20  not consent to the assessment plan, the district can conduct the reassessment by showing at a

21  due process hearing that it needs to reassess the student and it is lawfully entitled to do so.  20

22  U.S.C. § 1414(a)(1)(D); 34 C.F.R. § 300.300(c); Cal. Ed. Code, §§ 56321(c), 56381(f),

23  56501(a)(3), 56506(e).  In California, the Office of Administrative Hearings ("OAH") conducts

24  due process hearings.

---

[1]  School districts must also ensure that the child has access to education in the least restrictive environment ("LRE"), which means a disabled child should be educated with non-disabled peers to the maximum extent possible.  20 U.S.C. § 1415(i)(2)(C).  LRE is not at issue in this case.

[2]  The requirement that a reassessment occur "at least once every three years" is commonly referred to as a "triennial" assessment.

3

SF 321317v1

1    Under the IDEA and California special education law, after a school district has

2    conducted its own assessment, parents may request an independent educational evaluation (IEE)

3    at public expense if they disagree with the district assessment. 20 U.S.C. § 1415(d)(2)(A); 34

4    C.F.R. § 300.502; Cal. Ed. Code, § 56329(b). In response, a district may file for a due process

5    hearing to show its assessment is appropriate or may agree to fund the IEE. *Id.* If the final

6    administrative hearing decision is that the district's assessment is appropriate, "the parent still

7    has the right to an independent educational evaluation, but not at public expense." 34 C.F.R. §

8    300.502(b)(3).

9    **C.    Exhaustion of Administrative Remedies**

10    To bring a claim in federal court under the IDEA, a plaintiff must first exhaust his

11    administrative remedies. 20 U.S.C. § 1415(l). The IDEA provides:

12
13    > Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, Title V of the Rehabilitation Act of 1973, or other Federal statutes
14    > protecting the rights of children and youth with disabilities, except
      > that before the filing of a civil action under such laws seeking
15    > relief that is also available under this part, the procedures under
      > subsections (b)(2) and (c) [state and local due process hearings]
16    > shall be exhausted to the same extent as would be required had the
      > action been brought under this part.
17

18    20 U.S.C. § 1415 (l).

19    This language has been broadly construed to mean that if a plaintiff has alleged injuries

20    under *any theory* that could be redressed *to any degree* by the IDEA's administrative procedures

21    and remedies, the plaintiff must exhaust his or her administrative remedies before filing in court.

22    *Robb,* at 1050. Failure to exhaust such administrative remedies deprives the federal court of

23    jurisdiction, and requires dismissal of the complaint. *Id.,* at 1048, fn. 1 (affirming dismissal for

24    lack of subject matter jurisdiction); *Dreher v. Amphitheater Unif. Sch. Dist.,* 22 F.3d 228, 231

25    (9th Cir. 1994) (court properly found subject matter jurisdiction because the plaintiffs had

26    exhausted their administrative remedies); *Hayes v. Unified School Dist. No. 377,* 877 F.2d 809,

27    810 (10th Cir. 1989) (court lacked jurisdiction to hear merits when plaintiffs failed to exhaust

28    administrative remedies); *David D. v. Dartmouth Sch. Comm.,* 775 F.2d 411, 424 (1st Cir. 1985)

4

1  (finding "for issues to be preserved for judicial review they must first be presented to the

2  administrative hearing officer").

3       The IDEA's exhaustion requirement is intended to give state and local educational

4  agencies a chance to address issues regarding disabled children using their educational expertise

5  before they wind up in litigation. 20 U.S.C. § 1415 (l); *Hoeft v. Tucson Unif. Sch. Dist.*, 967

6  F.2d 1298, 1303, 1310 (9th Cir. 1992). As set forth in *Hoeft*, the IDEA's exhaustion

7  requirement "embodies the notion that 'agencies, not the courts, ought to have primary

8  responsibility for the programs that Congress has charged them to administer.'" *Hoeft*, 967 F.2d

9  at 1303 [citation omitted]. The Ninth Circuit has explained the purposes of the IDEA's

10  exhaustion requirement as follows:

11          Exhaustion of the administrative process allows for the exercise of
        discretion and educational expertise by state and local agencies,

12          affords full exploration of technical educational issues, furthers
        development of a complete factual record, and promotes judicial

13          efficiency by giving these agencies the first opportunity to correct
        shortcomings in their educational programs for disabled children.

14

15  *Id.*

16  **D.    Standard of Review and Burden of Proof**

17       Under the IDEA, if an aggrieved party files a civil action after a state hearing officer's

18  decision, a reviewing court "shall receive the records of the administrative proceedings; shall

19  hear additional evidence at the request of the party; and basing its decision on the preponderance

20  of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §

21  1415(i)(2)(C).

22       The preponderance of the evidence standard "is by no means an invitation to the courts

23  to substitute their own notions of sound educational policy for those of the school authorities

24  which they review." *Rowley*, 458 U.S. at 206. Rather, a reviewing court accords "due weight"

25  to the administrative proceedings. *Id.* Due weight means that "the courts are to consider the

26  findings 'carefully and endeavor to respond to the hearing officer's resolution of each material

27  issue,' but the court 'is free to accept or reject the findings in part or in whole.'" *Wartenberg*, at

28

5

DEFENDANT SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY
JUDGMENT; CASE NO. C-08-02805 EDL

891 (*quoting Gregory K.,* at 1311.)  However, while the court may, after due consideration, reject the administrative findings, it may not ignore them.  *Ojai Unified School District v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993).  Indeed the Ninth Circuit "gives the state hearing officer's decision 'substantial weight' when it 'evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented.'" *County of San Diego v. California Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996) [quoting *Ojai*, 4 F.3d at 1476].  "Moreover, findings of fact made in administrative proceedings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." *MM v. School District of Greenville County*, 303 F.3d 523, 531 (4th Cir. 2002).

As one court noted, "deference to the hearing officer makes sense in a proceeding under [the IDEA] for the same reason that it makes sense in the review of any other agency action -- agency expertise, the decision of the political branch to vest a decision initially in the agency, and the costs imposed on all parties of having still another person re-decide the matter from scratch." *Glendale Unified Sch. Dis. v. Almasi*, 122 F.Supp.2d 1093, 1100 (C.D. Cal. 2000). Thus, although the Ninth Circuit has referred to the standard of review in these cases as "de novo," this term is not entirely accurate, because of the "special weight given to the hearing officer's decision." *Ibid.*

The Ninth Circuit has explained that when an aggrieved party files a civil action under the IDEA, the use of a motion for summary judgment to resolve such a case is, in effect, a procedural convenience.  Substantively, however, "the procedure is ... an appeal from an administrative determination." *Wartenberg,* at 892.  Thus, it is perhaps better described as a judgment on the record. *Loren F. v. Atlanta Independent Sch. System*, 349 F.3d 1309, 1313 (11th Cir. 2003).

Plaintiff bears the burden of persuading this Court that the ALJ's Decision was incorrect. *Clyde K. v. Puyallup Sch. Dis., No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994), superseded by statute on other grounds.

In this case, two simple questions were presented to the ALJ over the course of a two

6

1    day hearing. A 456-page transcript and numerous exhibits support the well-reasoned decision

2    issued by the ALJ. Each finding of fact is supported by reference to the record, and all material

3    facts were considered by the ALJ in reaching her decision in favor of the District. Accordingly,

4    the Court should credit substantial weight to the ALJ's findings, defer to her credibility

5    determinations, and affirm her Decision. *Almasi, supra,* at 1101.

6    **III.    STATEMENT OF FACTS**

7        **A.    Student's Last Triennial Assessment**

8        G.B. is now a 17 year old student at San Ramon Valley Unified School District who is

9    eligible for special education and related services under the eligibility category of speech or

10   language impairment.[3]  Complaint ¶ 4; Testimony of ("Test.")[4] Jill Chandler ("J. Chandler")

11   5/12/08 at 174:24-25; 175:1. Test. TB 5/13/08 at 326:3-5. Student first became eligible for

12   special education and related services in May 1998, when he was in the first grade. DX 2 at p.

13   2; Decision at 1.[5]  Throughout the years, as the District has sought to assess Student's

14   educational needs, Parents have not allowed District staff to conduct assessments. Test. Jackie

15   Cheong ("JC") 5/12/08 at 25:18-21; 26:9-18; Test Cheryl Ng ("CN") 5/12/08 at 234: 4-18; Test.

16   Teri Locke ("TL") 5/13/08 at 305:5-12; Test. TB 5/13/08 at 332:23-25; 333:1-25; 334:1-4.

17       As required by federal and state special education laws, Student had his last triennial

18   assessment in June 2004. 20 U.S.C. § 1414 (a)(2)(B)(ii); Cal. Ed. Code § 56381(a); Student's

19   Exhibit ("SX") 1.E.1-12.[6]  Dr. Jacqueline "Jackie" Cheong, who is an independent assessor and

20   not a District employee, completed the triennial assessment, which included a comprehensive

21   psychoeducational assessment of Student. SX 1.E.1-12. Dr. Cheong conducted Student's last

22

23   [3]  Pursuant to California special education laws, a student "shall be assessed as having a language or speech
     disorder which makes him or her eligible for special education and related services when he or she demonstrates
24   difficulty understanding or using spoken language to such an extent that it adversely affects his or her educational
     performance and cannot be corrected without special education and related services." Cal. Ed. Code, § 56333.

25   [4]  Citations to testimony will be indicated at "Test." followed by the first initial and last name of the witness or by
     the witnesses' initials, except for Student's father, who is indicated by "Father" and Student's mother, who is
26   indicated by "TB".

     [5]  Citations to District's exhibits ("DX") will be by Exhibit number. Specific page citation will follow where
27   appropriate and be indicated by p. or pp..

     [6]  Citations to Student's exhibits at the administrative due process hearing will be provided in "SX Binder
28   Number.TabLetter.Page Number" format.

7

1  psychoeducational assessment in 2004, because Parents have not allowed District psychologists

2  to assess Student.   Test. Cheong 5/12/08 at 24:19-20; 25:18-21; 26:9-18.   Dr. Cheong's

3  psychoeducational testing found significant discrepancies in the areas of perceptual reasoning,

4  working memory and processing speed.  SX 1.E.6.  Student's next triennial evaluation was due

5  in November 2007.  SX 2.C.5; Test. CN 5/12/08 at 268:9-16; Decision ¶ 4 at 5.

6       **B.**    **June 2006 Independent Academic Assessment**

7         In June 2006, two years after Student's last triennial assessment, the District and Parents

8  agreed that Dr. Cheong, as an independent evaluator, would assess Student's academic

9  achievement in reading and writing.  DX 6; Decision ¶ 5 at 3.  The District and Parents had

10 agreed Dr. Cheong would conduct this academic assessment, in part because Parents refused to

11 allow District staff to assess him.   Test. JC 5/12/08 at 25:18-25; 26:1-18; 27:14-17.   Dr.

12 Cheong's 2006 independent assessment evaluated Student's academic achievement only and

13 was not a comprehensive triennial assessment.  Test. KH 5/13/08 at 402:10-13; 403:6-10; DX 6.

14 Plan Dr. Cheong's 2006 assessment did not include any cognitive or intellectual testing.  Test.

15 KH 5/13/08 at 403:6-10; 404:12-13; DX 6.

16        On August 18, 2006, the District convened Student's IEP team meeting to review Dr.

17 Cheong's May 2006 independent academic assessment results.  DX 2.E; Test. JC 5/12/08 at

18 30:15-17; 33:17-23; Test. CN 5/12/08 at 227:14-16; 228:15-16; 228:20-25; 229:1-4; Test. Janet

19 Terranova ("JT") 5/12/08 at 100:14-16; 104:5-7; Test. TB 5/13/08 at 312:15-19; 313:22-25.

20        At the August 18, 2006 IEP meeting, Dr. Cheong presented the findings of her

21 assessment and a written draft report.  SX 2.E.6-7 (stating "Jackie reviewed testing" and "Jackie

22 shared test scores"); SX 1.A.8-10; Test. JC 5/12/08 at 33:21-23; 34:2-4; Test. TB 5/13/08 at

23 312:15-19; 313:22-25.  Student's IEP team discussed Dr. Cheong's findings and utilized her test

24 results and recommendations to develop Student's IEP program on August 18, 2006.  Test. CN

25 5/12/08 at 229:5-16; Test JT 5/12/08 at 104:5-7; 105:15-23.  Parents participated in the IEP

26 meeting and did not object to Dr. Cheong's assessment or its findings.  Test. JC 5/12/08 at 34:5-

27

28

DEFENDANT SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY
JUDGMENT; CASE NO. C-08-02805 EDL

SF 321317v1

6; 334:20-23; SX 2.E. Parents consented to that IEP program, which had been developed in reliance on Dr. Cheong's May 2006 report. Test. TB 5/13/08 at 314:1-6.

### C.    District Efforts to Conduct Student's Triennial Assessment Due in November 2007

Based on Student's last triennial assessment in 2004, Student's next triennial reassessment was due in November 2007. SX 2.C.5. On August 30, 2007, the District convened Student's IEP team meeting. SX 2.C; Test. CN 5/12/08 216:1-3; Test. JT 5/12/08 at 128:3-6; Test. Karen Heilbronner ("KH") 5/13/08 at 384:11-13. At this meeting, the IEP team discussed Student's upcoming triennial assessment. Test CN 5/12/08 at 71:8-11; 216:7-12; Test JC 5/12/08 at 71:8-11. District IEP team members informed Parents of the November 2007 deadline to complete Student's triennial reassessment. SX 2.C.5; Test. CN 5/12/08 at 216:7-12.

Additionally, at the August 30, 2007 IEP meeting, the IEP team discussed the immediate need for an occupational therapy ("OT") assessment to evaluate Student's need for OT services at school. Test. CN 5/12/08 at 216:13-15; Test. KH 5/13/08 at 385:20-25; 386:1-8; Test. TB 5/13/08 at 328:20-22. The District prepared a document entitled "Re-Evaluation Review," in which it agreed to complete an OT assessment by September 26, 2007 and indicated Student's triennial was due November 2007. DX 8. Thus, the District intended to first conduct an OT assessment and then to complete the remainder of the comprehensive triennial assessment. Test. CN 5/12/08 at 216:13-25; 217:1-6; 257:15-17; 267:22-25; 268:1-3; 268:14-24; 270:6-11; Test. KH 5/13/08 at 386:16-21. Unfortunately, Parents did not consent to the OT assessment at that time. Test. CN 5/12/08 at 216:16-19.

On October 11, 2007, the District generated an assessment plan to complete Student's triennial assessments by the November 2007 deadline. DX 1; Test. CN 5/12/08 at 264:9-12. Pursuant to the October 11, 2007 assessment plan, the District sought to assess Student in the following domains: 1) academic/pre-academic achievement testing to be completed by the general education teacher and resource specialist; 2) speech/language assessment to be completed by a Speech and Language Pathologist; 3) intellectual development testing to be completed by a school psychologist; 4) gross/fine motor development evaluation to be

9

1    completed by the occupational therapist; and 5) career/vocational assessment to be conducted by

2    the resource specialist.[7]  DX 1; Test. CN 5/12/08 at 218:25; 219:1-25; 220:1-6.

3         After generating the assessment plan, Cheryl Ng, Student's resource specialist and case

4    manager, provided a copy of the assessment plan to Parents. Test. CN 5/12/08 at 222:14-25.  On

5    December 11, 2007, Ms. Ng contacted G.B.'s mother, T.B. ("Mother") in an attempt to obtain

6    consent to the proposed assessments.  SX 2.A.48; Test. CN 5/13/08 at 251:13-25.  Ms. Ng did

7    not receive any response or parental consent for the triennial assessment.  Test. CN 5/12/08 at

8    223:1-2.  On December 16, 2007, in an additional effort to obtain consent for the assessments,

9    Karen Heilbronner, the District's Director of Secondary Special Education, contacted Mother.

10    DX 3; Test. KH 5/13/08 at 394:1-19.  Mother did not reply, nor did she provide consent to the

11    proposed assessments. *Ibid*; Test. CN 5/12/08 at 223:1-2.

12         On December 19, 2007, the District convened another IEP meeting and again sought

13    Parents' consent to conduct the necessary triennial assessments.  DX 2; Test. KH 5/13/08 at

14    389:5-7; 389:11-15.  At the December 19, 2007 IEP meeting, District team members raised the

15    issue of consent for the triennial assessment.  Test. CN 5/12/08 at 224:4-21; Test JT 5/12/08 at

16    113:21-25;114:1-4; 117:19-22; Test. KH 5/13/08 at 389:23-25; 390:3-5; Test. TB 5/13/08 at

17    319:13-15; Test. JC 12/18/08 at 39:4-6; 39:19-21; 40:14-21; Test. Douglas Dildine ("DD")

18    5/14/08 at 427:9-19.  The District sought Parental consent for the triennial assessment.  Test. JT

19    5/12/08 at 114:9-13.  The IEP team discussed which assessments were warranted.  Test. JT

20    5/12/08 at 115:9-15; 116:1-15; 117:15-22; Test. JC 5/12/08 at 41:11-16; 41:25; 42: 1-18; Test.

21    CN 5/12/08 at 224:4-21.  Janet Terranova, assistant principal at Student's school of attendance,

22    discussed the importance of current assessments in planning for Student's upcoming college

23    enrollment.  Test. JT 5/12/08 at 113:21-25; 114:1-19; 115:9-25; 116:1-15; 117:5-22.  Dr.

24    Cheong explained how an updated assessment would assist the IEP team in planning Student's

25    program.  Test. JC 5/12/08 at 41:11-16; 42:4-25; 43:1-8.  No one suggested a triennial

26    assessment was not needed.  Test. KH 5/13/08 at 390:9-12.

---

[7]  The plan also proposed a motor assessment by an assistive technology specialist and a health update by the school nurse.  However, the District withdrew those issues and those assessments are not at·issue here.

10

1   At this time, the District learned Dr. Cheong had not been paid for her June 2006

2   independent academic assessment.   Subsequently, the District requested an invoice for the

3   assessment and remitted payment.   Test. JC 5/12/08 at 47:12-15; Stipulation.   Declaration of

4   Sarah Daniel, at Ex. A, at ¶ 11:1-4 (Order Following Pre-Hearing Conference).   Upon receipt of

5   payment, in March 2008, Dr. Cheong issued a final assessment report regarding her June 2006

6   independent academic assessment.   Stipulation.   *Id.*   The assessment results and information

7   provided in the final report did not differ from the draft report Dr. Cheong presented to the IEP

8   team on August 18, 2006.   Test. JC 5/12/08 at 38:16-22; 39:1-3.

9   In December 2007, Parents again refused to consent to the proposed assessments and

10   requested additional information regarding the specific assessment tools the District might use

11   to reassess Student.   Test. CN 5/12/08 at 219:4-24; Test. KH 5/13/08 at 390:16-21.   On January

12   18, 2008, in an effort to be extra cooperative, although it was not required by law, the District

13   provided Mother with additional information regarding specific testing instruments which might

14   be utilized in the completion of Student's triennial assessment.   DX 1; Test. CN 5/12/08 at

15   218:25; 219:1-25; 220:1-6; Test. TB 5/13/08 at 317:17-24; 323:20-23; 367:1-2.   Again, Parents

16   did not provide consent for the District to complete the proposed reassessments.   Test. CN

17   5/12/08 at 223:1-2; 224:4-14.

18   **D.**   **Request for IEE**

19   Following the District's multiple attempts to obtain parental consent for the triennial

20   assessments, on March 10, 2008, Student's mother requested an independent educational

21   evaluation stating: "I dispute my son's ([G.B.]) last assessment (or lack thereof)."   SX 2.A.33;

22   Test. KH 5/13/08 at 395:9-25.   Thus, Parents did not consent to the District's proposed

23   assessment plan dated October 11, 2007 (as modified on January 18, 2008).   Instead, for the first

24   time, Parents contended they were disputing Dr. Cheong's 2006 academic assessment.   Test. TB

25   5/13/08 at 368:24-25; 369:1.   At the time they disputed the 2006 assessment they were not in

26   possession of the March 2008 final report, indeed, their letter also requested a copy of that final

27   report.   DX 5.

28

11

1    On March 13, 2008, the District provided Mother with a copy of Dr. Cheong's final

2    report entitled "Report of Academic Assessment". DX 6. This report included the same scores

3    and findings as the draft report presented in August 2006. Test. JC 5/12/08 at 38:16-22; 39:1-3.

4    Mother then renewed her request for an IEE, asserting a disagreement with Dr. Cheong's

5    findings, despite the fact no dispute was raised in 2006 when the assessment was completed and

6    presented, and notwithstanding the fact the assessment was now out of date. Test. TB 5/13/08 at

7    314:1-6; Test. JC 5/12/08 at 34:20-23. The District denied the request for an IEE because: 1)

8    there was no current District assessment with which Mother was disagreeing; 2) the 2006

9    assessment conducted by Dr. Cheong was an independent assessment conducted at District

10   expense; and 3) the District was entitled to complete its own assessment prior to the

11   consideration of a request for an IEE. Test. KH 5/13/08 at 396:1-12; Test. JC 5/12/08 at 26:10-

12   18; 27:7-9; 27:14-17.

13   In fact, when Mother made her request for an IEE, she did not actually want an

14   assessment at all. Instead, she requested an IEE as a way to obtain a recommendation from an

15   independent non-District employee regarding whether Student required any assessments. Test.

16   TB 5/13/08 at 374:1-22; 376:3-10. Mother testified her request for an IEE was not a request for

17   assessments at all. Test. TB 5/13/08 at 374:13-18. Accordingly, by admission, no IEE is

18   warranted.

19   Pursuant to special education law, since the District denied Parents' request for an IEE,

20   on April 8, 2008, the District initiated a due process hearing to defend its decision to refuse to

21   fund an IEE. In addition, because the statutory scheme requires a due process hearing where

22   parents refuse consent to assess, the District also filed for due process to get permission to

23   assess so that it would have the information necessary to meet Student's needs in school and

24   provide him with a FAPE. Following a three day due process hearing, ALJ Suzanne Dugan

25   issued her decision ("Decision") on June 2, 2008 finding in the District's favor on all issues.

26   That Decision must be affirmed.

27

28

SF 321317v1

1    IV.    **ARGUMENT**

2        A.    **The ALJ Correctly Held the District Is Entitled to Reassess Student**

3        In the Decision, the ALJ properly determined the District has the right to conduct a

4    triennial reassessment of Student. Local educational agencies must reevaluate special education

5    students not more frequently than one time per year unless the parents and district agree

6    otherwise, but *at least once every three years unless the parent and district agree that a*

7    *reevaluation is unnecessary.* 20 U.S.C. § 1414(a)(2)(B). (Emphasis added). Student's last

8    triennial assessment was conducted in 2004. SX 1.E.1-12. Student's next triennial assessment

9    was due in November 2007. SX 2.C.5; Test. JT 5/12/08 at 129:22-23; Test. CN 5/12/08 at

10   268:14-16. Having determined that a reassessment was warranted, the District was obligated to

11   reassess Student in November 2007.

12       Parents who want their children to receive special education services must allow

13   reassessment by the District. *Gregory K.*, 811 F.2d 1307 at 1315; *Andress v. Cleveland Indep.*

14   *Sch. Dist.*, 64 F.3d 176, 178-9 (5th Cir. 1995) (holding if parents want their student to receive

15   special education under the IDEA, "they must allow the school itself to reevaluate the student

16   and they cannot force the school to rely solely on an independent evaluation"); *Dubois v.*

17   *Connecticut State Bd. of Ed.*, 727 F.2d 44, 48 (2nd Cir. 1984) (holding "[T]he school system

18   may insist on evaluation by qualified professionals who are satisfactory to the school officials");

19   *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1160 (11th Cir. 2006) (citing to *Gregory*

20   *K.*, *Dubois*, and *Andress* and holding the school district was entitled to reevaluate student by an

21   expert of its choice). In California, OAH administrative hearing decisions are in accord with

22   federal district courts and courts of appeals holding school districts are entitled to conduct

23   triennial reassessments of special education students.[8] *See Ripon Unified Sch. Dist.*, 107 LRP

24

25

26

---

27   [8] While OAH administrative hearing decisions are not precedent, they show California ALJs are in agreement with federal courts that school districts have a right to reassess special education students over parent objection. OAH

28   hearing decisions are available online at http://www.oah.dgs.ca.gov/Special+Education/SehoSearch.htm.

13

DEFENDANT SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY
JUDGMENT; CASE NO. C-08-02805 EDL

SF 321317v1

1    57047 (2007);[9] *Manteca Unified Sch. Dist.*, 47 IDELR 85, 106 LRP 63898 (2006);[10] *Temecula*

2    *Valley Unified Sch. Dist.*, 46 IDELR 268, 106 LRP 64094 (2006).[11]

3         Here, Parents are seeking continued special education and services for Student.

4    Therefore, Parents must allow reassessment by the District using staff selected by the District.

5    As the ALJ determined, because Student is due for a triennial assessment, and because the

6    District determined a triennial reassessment was warranted, the District should be allowed to

7    conduct the assessments proposed in the October 11, 2007 assessment plan, as enhanced on

8    January 18, 2008.   Moreover, because the District is required to conduct a comprehensive

9    assessment and to assess Student in all areas of suspected disability, the triennial must include

10   academic, intellectual, speech, occupational, and vocational evaluations.

### 1.    The ALJ's Decision Correctly Determined Conditions Warrant Reassessment of Student

13        The ALJ correctly determined the District is legally entitled to conduct a triennial

14   evaluation without restriction or condition from the Parents.   A school district must ensure the

15   reevaluation of a student occurs "if the local educational agency determines that the educational

16   or related service needs, including improved academic achievement and functional performance,

17   of the child warrant a reevaluation … or if the child's parents or teacher requests a

18   reevaluation." 20 U.S.C. § 1414(a)(2)(A); Cal. Ed. Code, § 56381(a).   Additionally, a student

19   must be assessed in all areas of suspected disability.  20 U.S.C. § 1414(b)(3)(b); Cal. Ed. Code,

20   § 56320(f).

21        Here, District members of Student's IEP team, including Dr. Cheong, an independent

22   evaluator, believe that a triennial assessment is warranted. Test. CN 5/12/08 at 225:4-24; 226:9-

23   13; Test. JC 5/12/08 at 41:11-25; 42:1-18; 46: 4-7; 96:2-11; Test. JT 5/12/08 at 113:21-25:

24   114:1-4; 117:19-22.   Student appears more capable than his current documentation suggests.

25   Test. Debbie Miller ("DM") 5/12/08 at 206:7-12; 211:1-13; Test. CN 5/12/08 at 217:14-25;

26   218:20-24.   He has not had a comprehensive psychoeducational assessment since his last

27   [9]  *See* http://www.documents.dgs.ca.gov/oah/seho_decisions/2007060591.pdf.

     [10]  *See* http://www.documents.dgs.ca.gov/oah/seho_decisions/2005110521.pdf.

28   [11]  *See* http://www.documents.dgs.ca.gov/oah/seho_decisions/2006050294.pdf.

14

1  triennial assessment in 2004. Test. JC 5/12/08 at 24:19-20; 25:18-21; 26:9-18; SX 1.E.1-12;

2  Decision ¶ 1 at 2. Student has made academic progress. Test. CN 5/12/08 at 223:21-25; 224:1-

3  3. Student is suspected of having autistic-like behaviors. Test. Father 05/14/08 at 4:5-8; Test.

4  DM 5/12/08 at 212:13-16. Current testing would address whether Student in fact demonstrates

5  needs associated with autistic-like behaviors. Test. JC 5/12/08 at 78:25; 79:1-5.

6        The record also establishes that Student requires testing in the area of speech and

7  language. It is undisputed that Student has a speech impairment and reading comprehension

8  deficits. Test. JC 5/12/08 at 76:8-10. The District has not conducted a speech and language

9  assessment of Student in the last three years. Test. J. Chandler 5/12/08 at 176:25; 177:1-2.

10  District staff testified a current speech and language assessment is necessary to identify

11  Student's present levels of performance, draft targeted individual goals and to develop an

12  individualized and appropriate speech therapy program. Test. J. Chandler 5/12/08 at 175:7-21;

13  180:2-8.

14        In addition, the record demonstrates Student requires a vocational assessment. Cheryl

15  Ng, Student's case manager, who has a credential in vocational education, credibly established

16  the need for a vocational assessment. Test. CN 5/12/08 at 225:18-24; 225:25; 226:1-8. Based

17  on Student's age, vocational assessment is warranted and would be helpful to his IEP team.

18  Test. DD 5/14/08 at 436:9-17; 442:3-9. Because Student will soon be transitioning out of high

19  school, a vocational assessment will help the team to clearly target his post-secondary goals.

20  Test. CN 5/12/08 at 225:17-24.

21        Moreover, Student has sensory needs which impact his educational performance but

22  have not been assessed in the past three years. Test. TL 5/13/08 at 298:11; 298:21-25; 299:1-6;

23  300:20-25; 301:1-9; Test TB 5/13/08 at 330:11-12; 333:4-6. Student has undergone tendon

24  surgery, which has affected his gross motor skills. Test. TB 5/13/08 at 332:20-22. Even Mother

25  agreed an assessment is appropriate but she would not allow the assessment because she "has a

26  problem with assessors." Test. TB 5/13/08 at 330:2-3; 330:25; 331:1-2.

27        In January 2008, Mother requested information regarding the qualifications of Jane

28  Garrick, the proposed District OT assessor. Test. KH 5/13/08 at 390:22-24; 391:13-21. The

15

1    District provided Mother with information regarding Ms. Garrick's license, education, and

2    experience.   SX 3.P.3; Test. KH 5/13/08 at 390:22-24; 391:13-21.   Even with the provided

3    information, and in spite of the agreement that a current OT assessment was needed, Student's

4    parents did not consent to the proposed OT assessment.  Test. KH 5/13/08 at 392:14-22.  It is

5    undisputed that an OT assessment was warranted in August 2007 and continues to be warranted

6    for Student.  Test. TL 5/13/08 at 302:1-23; Test. T5/13/08 at 328:17-22; 329:25; 330:1-2; Test.

7    TL 5/13/08 at 300:14-19; 302:1-23.

8        The record also supports the ALJ's determination regarding the need for an academic

9    reassessment.    Since  Dr.  Cheong's  2006  independent  academic  assessment,  Student  has

10   progressed  academically.    Test.  JT  5/12/08  at  117:15-18;  118:14-23;  145:12-15.    Since

11   Student's last academic evaluation in 2006, he has completed tenth and eleventh grade, passed

12   the high school exit exam, and his resistance to assistance has increased while his ability to

13   complete homework has improved.   Test. JT 5/12/08 at 146:17-22; 147:18-19. Test. Father

14   05/14/08 at 3:13-19.   During the beginning of the 2007-2008 school year, Student's teachers

15   approached the assistant principal, Ms. Terranova, and Student's case manager, Ms. Ng, about

16   his abilities, opining that he appeared to be more capable than the available documentation

17   suggested.   Test. JT 5/12/08 at 116:4-25; 117: 1; 117:5-18; Test. DM 5/12/08 at 196:18-25;

18   197:1-5; 198:14; 206:2-12; 211:1-13.  Because Student's skills have changed, because he has

19   progressed, and because the District needs to develop a program tailored to his individual needs,

20   academic reassessment is warranted.  Where circumstances warrant reassessment, as in the case

21   at hand, parents must allow it. *Andress, supra,* at 178-9.

22       Although Mother argued a triennial assessment cannot be warranted because she

23   believes Dr. Cheong's assessment had not been completed, this argument is without merit and

24   irrelevant to the issue of whether current assessment is warranted. *See Berkeley Unified Sch.*

25   *Dist.,* 106 LRP 49486 (2006)[12] (finding the parents' argument that a two year old assessment

26   was never completed was irrelevant to the issue of proposed triennial assessments).   Current

27

28   _____
     [12] *See* http://www.documents.dgs.ca.gov/oah/seho_decisions/2006050657.pdf.

SF 321317v1

1   information is needed.  The preponderance of the evidence established that current assessments

2   would assist Student's IEP team in targeting Student's unique needs, fostering independence,

3   and developing an appropriate educational plan for the next school year.  Members of Student's

4   IEP team, including Dr. Cheong, testified that current circumstances warrant reassessment.

5   Test. CN 5/12/08 at 223:3-25; 224:1-3; Test. JC 5/12/08 at 41:25; 42:1-18; Test. JT 5/12/08 at

6   115:9-25; 116:1-3; Test. J. Chandler 5/12/08 at 175:7-25; 176:1-25; 177:1-2; Test. DM 5/12/08

7   at 196:17-25; 197:1-4; 198:9-14; Test. TL 05/13/08 at 1-25; 303:1-3; Test. KH 5/13/08 at 393:7-

8   19.  Thus, the Court should affirm the ALJ's determination that triennial reassessment should be

9   authorized as proposed.

10          Similarly, the fact that at Student's December 2007 IEP meeting, the District used

11   information available to it then to develop and propose a FAPE for Student, does not negate the

12   District's need for current assessment information.  It is well-settled that hearing officers and

13   courts do not evaluate the appropriateness of an IEP in hindsight, even if they are armed with

14   actual evidence.  *Adams v. State of Oregon,* 195 F.3d 1141, 1149 (9th Cir. 1995) (finding in

15   "striving for 'appropriateness,' an IEP must take into account what was, and was not,

16   objectively reasonable when the snapshot was taken, that is, at the time the IEP was drafted'").

17   Here, the District developed Student's annual IEP in November 2007 with the information it had

18   available then as it was required by law to do.  At the same, the District continued to seek

19   Parents' consent to the proposed assessment plan to conduct the appropriate and necessary

20   assessments to ensure Student's program was tailored to his individual needs.  Therefore, the

21   Court should affirm the ALJ's determination allowing the District to conduct Student's triennial

22   reassessment.

23          **2.      The ALJ's Decision Properly Held Plaintiff Is Not Entitled to Dictate
                      Personnel Assignments**

24

25          The ALJ correctly held the District has the right to reevaluate Student for special

26   education services using its own personnel.  Parents who want their children to receive special

27   education services must allow reassessment by the District.  *Gregory K.,* 811 F.2d 1307, at

28   1315.  "The District has the right to evaluate Student for special education services using its

17

own personnel." *Andress, supra,* at 178-9; *Ripon Unified Sch. Dist.* 107 LRP 57047 (2007). *See also, Slama v. Independent School District No. 2580,* 259 F.Supp.2d 880, 888-89 (D. Minn. 2003) (holding "school districts have the sole discretion to assign staff"). In *Slama,* the district court concluded the school district did not have to hire a student's home aide to work at school. *Slama,* 259 F.Supp.2d at 888-89. The district court held that "school districts have the sole discretion to assign staff" and noted that it found no case "which granted sole discretion to a parent to select a specific individual to provide the generic-like services of [an educational assistant]." *Id.* at 884 and 889.

Here, Parents seek to exercise veto power over District decisions regarding Student's triennial assessments. Mother testified she objects to the District personnel assessing her son. Test. TB 5/13/08 at 330:2-3. The District has the right to assign its staff and has discretion over who completes a student's triennial evaluation. All of the District staff involved are qualified to reassess Student. Test. JC 5/12/08 at 43:21-25; 44:1-15; Test. J. Chandler 5/12/08 at 173:6-25; 174:1-12; Test. CN 5/12/08 at 214:17-25; 215:1-9; 225:25; 226:1-8; Test. TL 5/13/08 at 296:20-25; 297:1-8; Test. KH 5/13/08 at 391:17-25; 392:1-5; Decision ¶14 at 4. The District further has the right to make decisions about the types of assessment tools to be used and how they are to be administered. *Andress,* at 178-179 (finding a school district has the discretion to determine how an assessment will be conducted). Accordingly, the ALJ correctly determined "District staff needs to use their professional judgment and training to determine the proper tests to be given, the nature of observations during the assessment process, and information they need to gather to produce valid test results." Decision at 5.

Thus, Parents' objections to District personnel do not constitute a justification for denying consent to a warranted triennial assessment. In fact, as the ALJ found the "conditions and restrictions proposed by Parents to select assessors and an independent evaluator would unfairly constrain the assessment process such that the District might not have received the proper picture of Student, the nature of his disability, and how best to meet his needs in the educational environment." Decision at 5.

18

3.     **Parents Were Provided All Information Necessary to Give Informed Consent to Reassessment But Refused**

The ALJ correctly determined the District provided Parents with adequate notice of the triennial assessment and provided a proper written assessment plan to Parents. Decision ¶ 4 at 5. A reassessment requires parental consent. 20 U.S.C. § 1414(c)(3); Ed. Code, §§ 56321(c), 56381(f).) To obtain consent, a school district must develop and propose a reassessment plan. 20 U.S.C. § 1414(b)(1); Ed. Code, §§ 56321(a), 56381(f). The school district must present parents with a written assessment plan and include notice of the procedural safeguards under the IDEA. 20 U.S.C § 1414(a)(1)(D)(ii); Ed. Code, §§ 56321, 56329, 56381.

Here, Plaintiff makes numerous unsubstantiated claims and excuses for why Parents have refused to consent to the assessment plan. The evidence established the District informed Parents of Student's upcoming triennial assessment and its obligation to conduct a reassessment. SX 2.C; Test CN 5/12/08 at 71:8-11; 216:7-12; Test JC 5/12/08 at 71:8-11. The District then prepared a written assessment plan and presented the assessment plan and a copy of the Procedural Safeguards to Parents. DX 1; Test. CN 5/12/08 at 222:14-25; 225:4-6; 264:9-12. The assessment plan informed Parents the District sought to reassess Student in five specific areas:  1) academic/pre-academic achievement testing to be completed by the general education teacher and resource specialist; 2) speech/language assessment to be completed by a Speech and Language Pathologist; 3) intellectual development testing to be completed by a school psychologist; 4) gross/fine motor development evaluation to be completed by the occupational therapist; and 5) career/vocational assessment to be conducted by the resource specialist. DX 1; Test. CN 5/12/08 at 218:25; 219:1-25; 220:1-6. Thus, contrary to Parents' assertions, the assessment plan informed Parents of the areas or educational domains Student would be assessed in.[13]  Test. KH 5/13/08 at 389:11-25.

The record also establishes District staff provided Parents with ample information regarding the proposed assessment plan and types of assessments to be conducted. Test. KH

---

[13] Contrary to plaintiff's assertions, the assessment plan was not blank and provided Parents information regarding the areas Student would be tested in. Test. KH 5/13/08 at 389:11-25. Under cross examination, even Mother admitted the assessment plan was not "blank." Test. TB 5/13/08 at 320:22-25.

19

SF 321317v1

1    5/13/08 at 389:11-25; 394:1-19; SX 2.A.48; Test. CN 5/12/08 at 224:4-21; 251:13-25; DX 3;

2    Test. JT 5/12/08 at 115:9-15; 116:1-15; 117:15-22; Test. JC 5/12/08 at 41:11-16; 41:25; 42: 1-

3    18. In response to Parents' requests, although it was not required by law, the District revised the

4    initial October 11, 2007 assessment plan and on January 18, 2008 presented Parents with

5    information regarding specific testing instruments which might be utilized in the completion of

6    Student's triennial assessment.[14] DX 1; Test. CN 5/12/08 at 218:25; 219:1-25; 220:1-6; Test.

7    TB 5/13/08 at 317:17-24; 323:20-23; 367:1-2. Accordingly, the District provided Parents with

8    more than adequate information so Parents could provide informed consent to the proposed

9    assessment plan.

10        **B.    The ALJ's Order Should be Affirmed as Plaintiff Is Not Entitled to an IEE at This Time**

11

12        To establish that it was proper for a school district to deny a parent's request for an IEE,

13    the law requires the school district to demonstrate its assessment was appropriate. However, in

14    the case at bar, there is no District assessment for which to establish appropriateness. Mother

15    claimed she requested an IEE due to receiving Dr. Cheong's final assessment report in March

16    2008. However, the evidence established the assessment results, including the draft assessment

17    report, were presented and considered by Student's IEP team in 2006. Additionally, the

18    evidence established Dr. Cheong's assessment was an independent assessment provided at

19    District expense. Test. JC 5/12/08 at 27:7-17. Therefore, Student has already been provided

20    with an independent assessment and is not now entitled to another IEE merely because his

21    parents do not want him to be assessed by the District's personnel. Stated differently, there is

22    no District assessment with which Student's parents are disagreeing. Instead, because current

23    assessments are warranted, the District is entitled to conduct Student's triennial assessment

24    using its own personnel.

25

26

27    [14] On the assessment plan, the District did not list specific testing instruments in the speech and language domain
      because, after obtaining parental consent and prior to conducting the speech and language assessment, the District
      assessor would contact Student's current private speech therapist regarding Student's progress in communication
28    and to determine appropriate testing measurements. Test. JT 5/12/08 at 140:1-11.

DEFENDANT SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY
JUDGMENT; CASE NO. C-08-02805 EDL

SF 321317v1

### 1.    The ALJ Correctly Determined Plaintiff Does not Disagree with a District Assessment

The ALJ correctly determined Student's June 2006 academic assessment was conducted by an independent evaluator, and there were no District assessment reports with which Parents could disagree.  Under federal regulations, "a parent has the right to an independent educational evaluation ["IEE"] at public expense if the parent disagrees with an evaluation obtained by the public agency."  34 C.F.R. § 300.502(b)(1).  An IEE means an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question.  34 C.F.R. § 300.502 (a)(3)(i).  In short, a parent only has a right to an evaluation conducted by someone who is not employed by the district *if* she disagrees with an assessment conducted by a district employee or employees.  If a parent makes a request for an IEE under such circumstances, the district must either grant the IEE or file for due process.  34 C.F.R § 300.502(b)(2).  If the district files for due process under these provisions, the district will not have to pay for the IEE if it can prove the appropriateness of its own assessments.

Here, G.B.'s parents are not entitled to an IEE, because they did not disagree with an assessment by a District employee.  There is no District assessment for which to establish appropriateness.  The facts at the hearing established Mother requested an IEE because Dr. Cheong's final assessment report was issued in March 2008, although she received the same information in a draft report in 2006.  Dr. Cheong's assessment is an independent assessment which was provided at District expense, and therefore cannot provide a basis to demand yet another IEE.[15]  Plaintiff is attempting to short-circuit the District's right to conduct a triennial reassessment by seeking an IEE *before* the District has conducted the triennial reassessments.  This is not only not supported by the law, it is directly refuted.  Therefore, Plaintiff is not entitled to an IEE at this time.

---

[15]  In addition, the evidence established Dr. Cheong's 2006 assessment results were presented and considered in 2006 and were not late as plaintiff suggests.  SX 2.E.6-7; SX 1.A.8-10; Test. JC date 5/12/08 at 33:21-23; 34:2-4; 38:16-22; 39:1-3; Test. TB 5/13/08 at 312:15-19; 313:22-25.

21

**2.    The ALJ's Decision Must be Upheld Because Plaintiff Does Not Seek an IEE**

The ALJ correctly found the conditions and restrictions proposed by Parents to select an independent evaluator would not allow the District to properly assess Student's educational needs. Decision at 5. Parents are entitled to IEEs when they disagree with assessments the district has conducted. 20 U.S.C. § 1415(d)(2)(A); Cal. Ed. Code, § 56329(b). Here, Parents testified they were not requesting an independent assessment of Student. Mother testified she wanted someone independent of the District to review Student's file, consult with his independent service providers, and make a recommendation regarding whether Student should be reassessed at all. Test. TB 5/13/08 at 374:1-22; 376:3-10. This does not constitute an evaluation for which the District is obligated to pay.

Moreover, even if such a person were to recommend assessments, Mother testified she would have to consider whether to consent to any assessments. Id. at 376:3-10. According to their own admissions, Parents were not seeking, nor would they necessarily consent to, an independent educational evaluation. Instead, Parents were seeking a second opinion regarding whether legally mandated triennial reassessments should be conducted at all. That second opinion was offered by the ALJ. Accordingly, the ALJ's determination that no IEE was needed should be upheld.

**3.    Even if Plaintiff Were Entitled to an IEE at District Expense, Plaintiff Waived the Right to an IEE**

Student's 2006 academic assessment, conducted by Dr. Cheong, was presented to the IEP team and considered in the development of his IEP program. DX 2.E; Test. JC 5/12/08 at 30:15-17; 33:17-23; 34-2-4; Test. CN 5/12/08 at 227:14-16; 228:15-16; 228:20-25; 229:1-4; 229:5-16; Test. JT 5/12/08 at 104:5-7; 105:15-23; Test. TB 5/13/08 at 314:1-6. Parents received a copy of the report which was fully explained at the meeting and, no challenges were raised regarding the scores or results at that time. In fact, the parties developed and agreed to an IEP based on that report which is now two years old. Accordingly, this independent, two year old assessment, is not proper grounds for an IEE now. If Parents wanted another independent

22

SF 321317v1

assessment based on Dr. Cheong's independent assessment, they could have asked for it in 2006. It is too late for them to have made this request at this late juncture.

> **4.    Even if Plaintiff Were Entitled to an IEE, an IEE Would Only Encompass the Academic Domain, and the District Would Still be Entitled to Reassess Student in All Areas of Suspected Disability**

Dr. Cheong's 2006 independent assessment evaluated Student's academic achievement only. Therefore, even if Parents are able to establish they are entitled to an IEE based on Dr. Cheong's 2006 assessment, any IEE must be limited to an evaluation of Student's academic achievement and functioning. As discussed above, conditions warrant a comprehensive reassessment of Student in the areas of speech and language, intellectual development, gross motor, fine motor, and career or vocational skills. Therefore, even if Parents were entitled to an IEE based on Dr. Cheong's 2006 academic assessment, separate and apart from the IEE, the District would still be entitled to conduct a comprehensive triennial reassessment of Student.

> **C.    The ALJ's Decision Should be Upheld, Because Plaintiff's Claims Are Barred by the Failure to Exhaust Available Administrative Remedies**

In the Complaint, Plaintiff raises for the first time certain procedural and substantive violations of the IDEA, however, at no time has Plaintiff filed a due process hearing request to properly raise these allegations. In particular, Plaintiff claims the District had the burden of proof regarding filing "the subject complaint without undue delay." Complaint ¶10 at 4; ¶27 at 10. In the Complaint, Plaintiff alleges the District failed to disclose to Parents "until recently" that Student may be "on the Autism Spectrum." Complaint ¶11 at 4. Plaintiff also alleges the District "failed to obtain Dr. Cheong's assessment" within required assessment timelines. Complaint ¶11 at 5. He also alleges procedural violations with respect to Student's August 18, 2006 IEP meeting. Compalint ¶13 at 5. Plaintiff additionally alleges that at the August 18, 2006 IEP meeting, Dr. Cheong did not have an assessment report to provide to the IEP team. *Ibid.*

In addition, Plaintiff alleges the District did not provide Parents with progress reporting and violated its own policy regarding communications with parents. Complaint ¶16 at 6-7. Plaintiff claims the District did not provide Parents with information regarding a list of IEE

23

1    providers and criteria for IEEs. Complaint ¶23 at 9. Finally, in the Complaint, Plaintiff makes

2    allegations regarding a May 30, 2008 IEP meeting, which took place after the administrative

3    due process hearing. Complaint ¶26 at 10.

4         Before filing in court, a plaintiff must exhaust his administrative remedies. *Robb*, 308

5    F.3d 1047, at 1050. With respect to all of the above referenced allegations, Plaintiff has not

6    exhausted his administrative remedies, because Plaintiff did not raise and litigate these issues at

7    the administrative hearing. In fact, the District's request for due process hearing involved only

8    two discrete issues for hearing related to the District's right to assess Student and the Parents'

9    request for an IEE. Parents did not seek their own due process hearing or pursue any issues at

10   the administrative hearing. Therefore, there has yet been no opportunity to develop a factual

11   record in an adversarial hearing to test the sufficiency of Plaintiff's new allegations of

12   procedural violations under the IDEA. Since Plaintiff has completely failed to bring these new

13   claims in any forum prior to raising them in this federal litigation, these claims must be

14   dismissed for failure to exhaust.

15   **V.    CONCLUSION**

16        The ALJ's Decision is supported by the evidence and the law, and is entitled to

17   deference. The Court should therefore enter a judgment in the District's favor affirming that

18   the District is entitled to conduct its proposed triennial assessment and that no independent

19   evaluation is warranted or contemplated under the law in this circumstance.

20   DATED: July 18, 2008                    MILLER BROWN & DANNIS

21

22

23                                          By:   /s/ Amy R. Levine
                                            AMY R. LEVINE
24                                          Attorneys for Defendant
                                            SAN RAMON VALLEY UNIFIED
25                                          SCHOOL DISTRICT

26

27

28

SF 321317v1