IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.B., a minor by and through T.B., his Guardian Ad Litem,<br><br>Plaintiff,<br><br>v.<br><br>SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | No. C-08-02805 EDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On June 5, 2008, Plaintiff G.B., proceeding pro se through his Guardian Ad Litem, T.B., brought this action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq., seeking review of a special education administrative hearing decision finding that Defendant San Ramon Valley Unified School District has a right to assess Plaintiff G.B. pursuant to Defendant's assessment plan and that G.B.'s parents are not entitled to an Independent Educational Evaluation ("IEE") at this time. Defendant moved for summary judgment seeking an order that the Administrative Law Judge ("ALJ") did not err in reaching that decision. Plaintiff opposed Defendant's motion. On September 2, 2008, the Court held a hearing on this matter. For the reasons stated at the hearing and in this Order, the Court grants Defendant's Motion for Summary Judgment.[1]

**Legal Standard**

The IDEA provides federal funds to assist state and local agencies in educating children with

---

[1] Defendant has also filed a motion to supplement the record with testimony from Plaintiff's father that was missing from the record. On September 3, 2008, the Office of Administrative Hearings certified a new administrative record in this case that includes Plaintiff's father's testimony. Accordingly, Defendant's motion to supplement is denied as moot.

disabilities, but conditions such funding on compliance with certain goals and procedures. See 20 U.S.C. § 1412. The IDEA's primary purpose is "to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [.]" 20 U.S.C. § 1400(c). This purpose is achieved through the development of an individualized education program ("IEP") for each child with a disability. An "appropriate" public education does not mean the best or "potential-maximizing" education for the individual child; rather, the states are obliged to provide "a basic floor of opportunity" through a program "individually designed to provide educational benefit to the handicapped child." Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir.1987) (citing Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 201 (1982); see also 20 U.S.C. § 1401(a)(18)(d). A child receives a free appropriate public education ("FAPE") when the program: (1) addresses the child's unique needs; (2) provides adequate support services so the child can take advantage of educational opportunities; and (3) is in accord with the IEP. Rowley, 458 U.S. at 188-89.

The parents or guardians of a disabled child are entitled to bring a complaint about "any matter relating to" the child's evaluation and educational placement. 20 U.S.C. § 1415(b)(1)(C)-(E). If the parents make a complaint, they are entitled to "an impartial due process hearing" conducted either by the state or local educational agency, or an intermediate educational unit, as determined by state law. 20 U.S.C. § 1415(b)(2). After the administrative hearing officer renders a decision, "[a]ny party aggrieved by the findings and decision" has the right to bring a civil action in state or federal court. 20 U.S.C. § 1415(e)(2).

In an action challenging an administrative decision, the IDEA provides that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). The party challenging the administrative decision bears the burden of persuading the court that the decision was in error. See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996); Miller ex rel. Miller v. San Mateo-Foster City Unified School Dist., 318 F. Supp.2d 851, 859 (N.D. Cal. 2004). Unless the record imparts a

"definite and firm conviction that a mistake has been committed," there is no basis for a court to reverse the administrative decision. Ash v. Lake Oswego School District No. 7J, 980 F.2d 585, 589 (9th Cir. 1992).

The standard of review for IDEA cases does not "fit well into any pigeonhole of the Federal Rules of Civil Procedure." Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995). On the one hand, the IDEA provides for additional evidence, and the administrative agency is thus given less deference than is normally given to administrative decisions. On the other hand, the standard of review is not de novo because Congress intended to give the states primary responsibility for each individual child's education. Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 888 (9th Cir. 2001). When reviewing state administrative decisions, "courts must give 'due weight' to judgments of education policy[.]" Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir.1987) (citation omitted). "The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole." Doe v. Berkeley Unified Sch. Dist., 1993 WL 560704 at *4 (N.D. Cal. 1993) (citations omitted.)

The IDEA does not empower courts to "'substitute their own notions of sound educational policy for those of the school authorities which they review.'" Rowley, 458 U.S. at 206. Thus, the court must "make an independent judgment based on a preponderance of the evidence and giving due weight to the hearing officer's determinations." Capistrano, 59 F.3d at 892; see also Zasslow v. Menlo Park Sch. Dist., 2001 WL 1488617 at * 9 (N.D. Cal. Nov. 19, 2001). However, the amount of deference due is left to the discretion of the court. Gregory K, 811 F.2d at 1311; see also Ojai Unified School Dist. v. Jackson, 4 F.3d 1467, 1471-72 (9th Cir. 1993) (noting the "unusual mixture of discretion and deference"). Where the hearing officer has made thorough and complete findings, courts will grant increased deference. Adams v. State of Oregon, 195 F.3d 1141, 1145 (9th Cir. 1999).

**Relevant facts**

G.B. is a senior in high school in San Ramon Valley Unified School District who was

eligible for special education and related services under the eligibility category of speech or language impairment. See May 12, 2008 Tr. at 174:14-175:1 (Chandler Testimony); May 13, 2008 Tr. at 38:3-5 (Brock Testimony). He first became eligible for special education in May 1998 when he was in the first grade. See Daniel Decl. Ex. A at ¶ 1. Throughout the years, G.B.'s parents have not allowed District staff to conduct assessments. See, e.g., May 12, 2008 Tr. at 234:4-5 (Ng Testimony); May 13, 2008 Tr. at 45-46 (Brock Testimony).

G.B. had his last triennial assessment in June 2004 by Dr. Cheong, who has evaluated G.B. four times during the relevant period. See Pl.'s Binder 1 at Ex. E; May 12, 2008 Tr. at 24:19-20 (Cheong Testimony). During that time, no District psychologists have assessed him. See May 12, 2008 Tr. at 25:18-21 (Cheong Testimony). Dr. Cheong is an independent evaluator, who formerly worked for the District. G.B.'s next triennial evaluation was due in November 2007. See May 12, 2008 Tr. at 268:9-16 (Ng Testimony); ALJ Dec. at 5 at ¶ 4.

In June 2006, Dr. Cheong assessed G.B.'s academic achievement in reading and writing. See Def.'s Ex. 6; see also May 13, 2008 Tr. at 402:10-13 (Heilbronner Testimony); 403:6-10 (Dr. Cheong's report in 2006 was not comprehensive, but only evaluated academic achievement, not for example, cognitive testing or intellectual functioning testing). On August 18, 2006, the District convened G.B.'s IEP team meeting to review Dr. Cheong's 2006 academic evaluation, during which Dr. Cheong reviewed testing and shared test scores. See Pl.'s Binder 2, Ex. E; May 12, 2008 Tr. at 30:15-17; 33:21-23 (Cheong Testimony); Pl.'s Binder 1, Ex, A:8-10; Pl.'s Binder 2, Ex. E at 6-7. Dr. Cheong also presented a draft report. See May 12, 2008 Tr. at 34:2-4 (Cheong Testimony); Pl.'s Binder 1 at Ex. A. G.B.'s parents attended this IEP meeting and consented to the IEP. See May 12, 2008 Tr. at 34:5-6 (Cheong Testimony); May 13, 2008 Tr. at 26:4-6 (Brock Testimony). G.B.'s mother states that she had a private speech assessment performed in August 2006. See Opp. at 5.

On August 30, 2007, the District convened G.B.'s IEP team meeting. See May 12, 2008 Tr. at 216:1-3 (Ng Testimony); Pl.'s Binder 2 Ex. C. G.B.'s mother attended this team meeting. See May 13, 2008 Tr. at 39:24-40:1 (Brock Testimony). The upcoming November 2007 triennial assessment was discussed. See May 12, 2008 Tr. at 71:14-16 (Cheong Testimony); May 12, 2008 Tr. at 216:10-12 (Ng Testimony). The team also discussed the need for an immediate occupational

4

1  therapy assessment to evaluate the need for OT services at school. See May 12, 2008 Tr. at 216:13-
2  15 (Ng Testimony); May 13, 2008 at 98:5-8 (Heilbronner Testimony). The District completed a Re-
3  Evaluation Review agreeing to complete an OT assessment by September 26, 2007 and indicating
4  that the triennial assessment was due in November 2007. See Def.'s Ex. 8. Parents did not consent
5  to the OT assessment. See May 12, 2008 Tr. at 216:16-19 (Ng. Testimony)

6        On October 11, 2007, the District generated an assessment plan, including evaluations in a
7  variety of areas, to complete the triennial assessments by November 2007. See May 12, 2008 Tr. at
8  264:9-19 (Ng Testimony); Def.'s Ex. 1. Ms. Ng, G.B.'s resource specialist and case manager,
9  mailed the assessment plan to G.B.'s parents within a day of creating it. See May 12, 2008 Tr. at
10 222:16-25 (Ng Testimony). On December 11, 2007, Ms. Ng contacted G.B.'s parents to obtain
11 consent for the assessments. See id. at 251:17-19; Pl.'s Binder 2, Ex. A at 48. On December 16,
12 2007, Karen Heilbronner, District's Director of Secondary Special Education, contacted G.B.'s
13 mother about the tests. See Def.'s Ex. 3; May 13, 2008 Tr. at 106:1-19 (Heilbronner Testimony).
14 No consent was received.

15       On December 19, 2007, the District convened another IEP meeting and sought consent for
16 the triennial and discussed what assessments would be performed. See Def.'s Ex. 2; May 12, 2008
17 Tr. at 224:7-21 (Ng Testimony); May 12, 2008 Tr. at 113:21-114:1 (Terranova Tetsimony); May 13,
18 2008 Tr. at 101:23-102:5 (Heilbronner Testimony); May 12, 2008 Tr. at 39:19-40:21 (Cheong
19 Testimony). No one suggested that a triennial assessment was not needed. See May 13, 2008 Tr. at
20 390:9-12 (Heilbronner Testimony). G.B.'s parents refused to consent to the proposed assessments
21 and requested additional information regarding the specific assessment tools. See May 12, 2008 Tr.
22 at 219:19-220:6 (Ng Testimony); Def.'s Ex. 1 (e-mail to Parent). The parents did not provide
23 consent. See May 12, 2008 Tr. at 223:1-2 (Ng Testimony). G.B.'s mother testified that the
24 assessment form that was put in front of her for her signature was blank. See May 13, 2008 Tr. at
25 31:23-25 (Brock Testimony)

26       Also in December 2007, Dr. Cheong was paid for her 2006 assessment and she issued a final
27 report in March 2008. See Daniel Decl. Ex. A. The final assessment did not differ from the draft
28 report presented at the August 18, 2006 IEP meeting, except that it provided some additional

explanation of the information in the draft report.  See May 12, 2008 Tr. at 38:20-39:2 (Cheong Testimony).

On March 10, 2008, G.B.'s mother requested an IEE, stating: "I dispute my son's (Greg Brock) last assessment (or lack thereof)."  See Pl.'s Binder 2 Ex. A at 33.  The dispute was as to the 2006 Cheong report.  See May 13, 2008 Tr. at 80:24-81:15 (Brock Testimony).  G.B.'s mother had not received the final March 2008 report when she requested the IEE.  See Def.'s Ex. 5.  On March 13, 2008, the District provided G.B.'s mother with a copy of the report.  See Def.'s Ex. 6.  The District denied the IEE because there was no current District assessment with which the parents disagreed, because the 2006 assessment conducted by Dr. Cheong was an independent assessment conducted at District expense, and because the District was entitled to complete its own assessment prior to the consideration of a request for an IEE.  See May 12, 2008 Tr. at 27:14-17 (Cheong Testimony); May 13, 2008 Tr. at 108:1-13 (Heilbronner Testimony).  G.B.'s mother testified that her request for an IEE was not a request for assessment at all, but was a request for someone to determine whether the assessments were necessary.  See May 13, 2008 Tr. at 86:13-22 (Brock Testimony).

On April 8, 2008, the District initiated a due process hearing to defend its decision to refuse to fund an IEE.  The District also sought a hearing to get permission to proceed with the assessments because G.B.'s parents refused to consent.  On June 2, 2008, the ALJ issued her decision in favor of the District.  See Daniel Decl. Ex. A.

**Discussion**

**1.    The ALJ did not err in concluding that the District could conduct its triennial assessment.**

Assessments are the cornerstone of the IEP process.  See 20 U.S.C. § 1414(b)(2)(A).  The IDEA provides for periodic reevaluations to be conducted not more frequently than one time per year unless the parents and District agree otherwise, but at least once every three years unless the parent and District agree that a reevaluation is not necessary.  See 20 U.S.C. § 1414(a)(2)(B).  Reassessments require parental consent.  See 20 U.S.C. § 1414(c)(3).  To obtain that consent, the District develops an assessment plan.  See 20 U.S.C. § 1414(b)(1).  Parents who want their children to receive special education services must allow reassessment by the District.  See Gregory K. v.

6

1 Longview Sch. Dist., 811 F.2d 1307, 1315 (9th Cir. 1987). If parents do not consent, the District
2 can conduct the reassessment by showing at a due process hearing that it needs to reassess the
3 student and it is lawfully entitled to do so. See 34 C.F.R. § 300.300(c).

4     Here, the record supports the ALJ's decision that the District was entitled to reassess G.B.
5 The ALJ determined that a triennial was necessary, and that the District believed that a reevaluation
6 was necessary. See Daniel Decl. Ex. A at 5 at ¶ 4; May 12, 2008 Tr. 225:4-24; 226:9-13 (Ng
7 Testimony); May 12, 2008 Tr. at 41:25-42:2 (Cheong Testimony); May 12, 2008 Tr. at 113:25-
8 114:7 (Terranova Testimony). The District had not conducted a speech and language assessment in
9 the three years before 2007, even though G.B. had a speech impairment and reading comprehension
10 difficulties. See May 12, 2008 Tr. at 176:25-177:1 (Chandler Testimony); May 12, 2008 Tr. at 76:8-
11 10 (Cheong Testimony). A vocational assessment was also needed because G.B. was a junior in
12 high school. See May 12, 2008 Tr. at 225:18-24 (Ng Testimony); May 14, 2008 Tr. at 25:3-9
13 (Dildane Testimony). His well-established sensory needs had not been assessed within three years.
14 See May 13, 2008 Tr. at 10:16-23 (Locke Testimony); May 13, 2008 Tr. at 42:25-43:2 (Brock
15 Testimony). All of these tests were part of the triennial assessment, and the ALJ found that the next
16 assessment was due in November 2007. See Daniel Decl. Ex. A at 5 at ¶ 4. Further, the record
17 shows that G.B. had progressed academically since Dr. Cheong's 2006 assessment, including
18 passing tenth and eleventh grades and passing the high school exit exam. See May 12, 2008 Tr. at
19 117:15-18; 146:146:17-147:19 (Terranova Testimony). G.B.'s teacher, Ms. Miller, testified that
20 what she was seeing in her classroom differed from the paperwork she had seen regarding G.B.'s
21 abilities. See May 12, 2008 Tr. at 206:7-12 Mmiller Testimony)

22     Plaintiff argues that the ALJ erred in finding that the triennial assessment was due in
23 November 2007, and that the assessment was actually due in June 2007. Plaintiff cites no authority
24 for this argument, but assuming that Plaintiff is correct, this fact is not material. Plaintiff also argues
25 that there is no requirement that the triennial assessment include standardized testing, but the ALJ
26 did not require (or forbid) standardized testing. See Daniel Decl. Ex. A at 5 at ¶ 5 (stating that the
27 District should use its professional judgment regarding tests).

28     Plaintiff argues that G.B. was assessed within the last three years because he was evaluated

7

by Dr. Cheong in 2006. There is no dispute that Dr. Cheong examined G.B. in 2006, but Plaintiff cites no evidence that the 2006 assessment, which focused on academic achievement, was a triennial one or that it was comprehensive as the triennial assessment is intended to be. Although Plaintiff also argues that because G.B.'s parents did not receive Dr. Cheong's report until March 2008, a triennial assessment is not warranted, the caselaw does not support that argument. See Def.'s Appx. of Foreign Auth. Ex. D (Berkeley Unified Sch. Dist., 106 LRP 49486 (ordering assessment of child absent parents' consent even though a partial assessment had been conducted one year before)).

Plaintiff also argues that the parents were not given enough information to decide whether to consent to the assessment plan. The record, however, does not support this argument. The District provided parents with the assessment plan either in October 2007 or at least by January 2008, explained the plan and responded to the request for more information. See, e.g., May 12, 2008 Tr. at 219:2-220:6 (Ng Testimony); Pl.'s Binder 2 at A48; May 13, 2008 Tr. at 101:11-102:8 (Heilbronner Testimony); May 12, 2008 Tr. at 42:22-438 (Cheong Testimony). The assessment plan informed the parents that there were five specific areas for assessment, including academic, speech and language, intellectual development, gross/fine motor skills, and vocational. See Def.'s Ex. 1.

Plaintiff argues that the ALJ erred because there was no requirement that District assessments be performed by District employees. The ALJ, however, did not find that the in-house District employees must conduct evaluations, only that: "The District has the right to evaluate Student for special education services using its own personnel." See Daniel Decl. Ex. A at 5 at ¶ 5. In any event, Plaintiff has cited no authority to support an argument that a parent may veto the District's choice of assessor.

The ALJ also found that the District staff should use their professional judgment in determining which tests to give. See id. Plaintiff argues that this finding is erroneous because the District has not provided an appropriate assessment and has failed in its duties to perform assessments. Plaintiff's argument, however, is not on point; there is no authority to support a finding that the ALJ erred in stating that the District should use its professional judgment. Whether the District errs in exercising that judgment is not at issue here.

Finally, Plaintiff points out several ways in which he believes the District mishandled this

8

case, but none of those facts show that the District is not entitled to a triennial assessment under the law. For example, Plaintiff argues that the District failed to pay Dr. Cheong's bill, so she did not release her final report until March 2008, even though the draft was written in 2006. Plaintiff also argues that the District speech therapist failed to perform an assessment, so that a private assessment was required. Plaintiff also argues that the Assistive Technology assessment was not performed until past the deadline. Plaintiff states that the triennial assessment plan was not mailed to Plaintiff in October 2007 and Plaintiff only received it in January 2008. Plaintiff argues that the triennial assessment plan was completed without looking at crucial documents. Plaintiff argues, citing her own testimony, that the District threatened to sue her if the parents did not sign off on the assessment plan. See May 13, 2008 Tr. at 79:5-8 (Brock Testimony)

In sum, although Plaintiff does not believe that an assessment is necessary (and believes that if one is necessary, it should not be conducted by District personnel), none of the evidence or facts cited by Plaintiff demonstrates that the ALJ erred in determining that the District could conduct its reassessment. The law applied and facts found by the ALJ and supported by the record are that: (1) the District is entitled under the law to a triennial assessment unless the parents and District decide one is not warranted; (2) parents did not consent to the triennial assessment, which was discussed with them in at least two IEP meetings; (3) the triennial was due in November 2007 because the last triennial was in June 2004 (explicitly finding that Dr. Cheong's assessment was not a triennial assessment); and (4) that the District believed a triennial assessment was necessary. See Def.'s Appx. of Foreign Auth. Ex. 1 (Ripon Unified School Dist., 107 LRP 57047 (Sept. 12, 2007) ("Reassessments of a student eligible for special education must be conducted at least every three years, or more frequently if the local educational agency determines conditions warrant reassessment, or if reassessment if requested by the student's teacher or parent.")); Ex. 3 (Temecula Valley Unified School Dist., 46 LRP 64094 (June 21, 2006) (same)).

**2.    The ALJ did not err in concluding that an IEE was not warranted**

After a District has conducted its own assessment, parents may request an IEE at public expense if the parents disagree with the District assessment. See 20 U.S.C. § 1415(d)(2)(A); 34 C.F.R. § 300.502; Cal. Ed. Code § 56329(b). In response, the District may file for a due process

9

hearing to show its assessment is appropriate or may agree to fund the IEE.  See id.  If the administrative judge decides that the assessment is appropriate, the parent still has the right to an IEE, but not at public expense.  See 34 C.F.R. § 300.502(b)(3).

Here, Plaintiff appeared to argue that the late delivery of Dr. Cheong's 2006 assessment provided grounds for an IEE.  The ALJ, however, found that Dr. Cheong's 2006 assessment was not a triennial assessment and that even though the 2006 report was not provided to parents until 2008, it was discussed at the August 2007 IEP.  See Daniel Decl. Ex. A at 4 at ¶ 16.  The ALJ found that a triennial assessment was warranted, so there were no grounds for an IEE at District expense.  This decision is supported by the record.  The ALJ did not foreclose the availability of an IEE to challenge the specific assessment once it is made.

Although Plaintiff argues that an IEE is appropriate based on Plaintiff's disagreement with the evaluation obtained by the District through Dr. Cheong, Plaintiff's mother testified that G.B. is not actually seeking an IEE, but instead an independent evaluation of whether the triennial should take place in the first instance.  See May 13, 2008 Tr. at 86:13-15; 88:3-10 (Brock Testimony).  While Plaintiff's parents argue that an independent review is necessary, they do not appear to be disagreeing with any District assessment that has been done to date.  Therefore, there has been no showing that the predicate for an IEE at public expense exists.  Plaintiff is premature in seeking the IEE; he has cited no authority that his disagreement with an assessment plan triggers an IEE.  The ALJ did not err in denying the IEE at public expense.

**3.  Plaintiff failed to exhaust administrative remedies with respect to the other issues raised in his opposition.**

A plaintiff must exhaust administrative remedies before bringing a claim in federal court under the IDEA.  See 20 U.S.C. § 1415(l).  The exhaustion language is construed broadly to require exhaustion for any alleged injuries under any theory that could be redressed to any degree by the IDEA administrative procedures.  Robb v. Bethel School Dist. #403, 308 F.3d 1047, 1050 (9th Cir. 2002).  Failure to exhaust deprives the court of jurisdiction and requires dismissal.  See, e.g., id. at 1048, n. 1.  "The exhaustion doctrine embodies the notion that 'agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.'"  Hoeft

10

v. Tuscon Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1992) (citation omitted).

Here, the only issues before the ALJ were whether the District was entitled to conduct its triennial assessment of G.B. and whether the District properly denied the request for an IEE. In his opposition, Plaintiffs raises a number of issues unrelated to those that were addressed at the administrative hearing and included in the ALJ's decision. For example, Plaintiff alleged in the complaint that the District did not provide progress reports and did not provide a list of IEE providers. See Compl. ¶¶ 16, 23. However, the ALJ specifically stated that the lack of progress reporting was not before her. See May 12, 2008 Tr. at 152:20-153:15. In accordance with the exhaustion requirement, any issues outside of those considered by the ALJ are not properly before the Court.

**Conclusion**

Accordingly, Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

Dated: September 16, 2008

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge